**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD GIBLIN,** | : | **CIVIL ACTION NO. 1:12-CV-1648** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **KCI INSURANCE AGENCY, INC., and** | : | |
| **RONALD COOPERMAN,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Presently before the court is plaintiff's motion (Doc. 15) to lift the stay entered by the court on September 11, 2012, and enforce a settlement agreement entered into between the parties on September 25, 2013. For the reasons that follow, the court will grant the motion.

**I.  <u>Background</u>**

The instant action arises out of the alleged breach of an employment agreement between plaintiff Richard Giblin ("Giblin") and defendant KCI Insurance Agency, Inc. ("KCI"). (<u>See</u> Doc. 4). Defendant Ronald Cooperman ("Cooperman") served as the President of KCI at all times relevant to this case. (<u>See</u> Doc. 20-1, Ex. A ¶ 2). Giblin originally filed suit in the York County Court of Common Pleas, and KCI removed the action to this court on August 20, 2012. (Doc. 1). The parties stipulated to a stay on September 10, 2012 to enable the parties to proceed to contractually-mandated arbitration. (Docs. 7, 8).

The parties were scheduled to attend an arbitration hearing on this matter before the Honorable Virginia Long (Ret.), a former Chief Justice of the New Jersey Supreme Court, on September 25, 2013. (Doc. 15-3 ¶ 30; Doc. 20-3 ¶ 4). Instead, on the morning of September 25th, the parties executed a Memorandum of Agreement ("MOA") providing that Giblin would receive $300,000.00 in full settlement of his claims. (See Doc. 15-3 ¶¶ 30, 32; Doc. 20-3 ¶ 5). The parties agreed that payment to Giblin would be comprised of monthly payments from a third-party, Encompass Risk Solutions ("Encompass"). (See Doc. 16, Ex. 25). Encompass had previously entered into a sales transaction with KCI in 2012, by terms of which Encompass pays KCI a percentage of all of Encompass's revenue over a six-year period. (See Doc. 15-3 ¶ 33). The MOA specifically states that "Plaintiff will receive Nine Percent (9%) of the monthly revenue that Encompass is obligated to pay KCI Insurance Agency, Inc." (Doc. 16, Ex. 25). Cooperman asserts that "[a]t the time that we entered into the Memorandum of Agreement, Plaintiff was aware that KCI receives payment from Encompass Risk Solutions after Encompass deducts amounts due to other creditors of KCI and myself." (Doc. 20-1 ¶ 15). Based upon the anticipated revenue from Encompass, the parties estimated that the $300,000.00 would be paid off in approximately 40 to 42 months once the monthly payments commenced. (Doc. 15-3 ¶ 34).

On October 7, 2013, plaintiff's counsel, Peter L. Frattarelli, Esquire ("Attorney Frattarelli"), forwarded to defendants' counsel, Timothy J. Nieman, Esquire ("Attorney Nieman"), a draft Settlement Agreement and Release. (Doc. 16,

Ex. 26).  This draft stated that "[t]he monthly installment will be equal to nine

percent (9.0%) of the revenues, compensation and/or other monies that are

currently required to be paid from Encompass to [KCI], pursuant to a separate

agreement under which Encompass is obligated to make monthly payments to

[KCI]."  (Id. at 100).  Attorney Nieman responded by email on October 17, 2013, and

stated the following:

> Ron has concerns with the language in Paragraph 3(b).  His
> understanding was that the payments were 9% of the payment made
> by Encompass to KCI, in other words a net number.  The
> Memorandum of Agreement that we signed at the arbitration is
> consistent with his position: "Payment to Plaintiff of the Settlement
> Amount in Paragraph 2.A shall be in the form of a direct payment from
> Encompass Risk Solutions.  Plaintiff will receive nine percent (9%) of
> the monthly revenue that Encompass is obligated to pay KCI
> Insurance, Inc."  (Emphasis added).  Paragraph 3(b) is currently
> written in such a way that the payment is 9% of the gross amount from
> Encompass.

(Doc. 16, Ex. 27 at 110).

Attorney Frattarelli asserts that he discussed this concern directly with

Attorney Nieman by telephone.  (Doc. 15-3 ¶ 36).  Attorney Frattarelli claims that

"the concern [Attorney Nieman] expressed was that the Settlement Agreement and

Release, as I originally drafted it, could be read to mean that Encompass would owe

my client Nine Percent of Encompass's total revenues, as opposed to Nine Percent

of what Encompass owes KCI."  (Id.)  Attorney Nieman contends that during the

phone call, "I reiterated Defendants' position that the Memorandum of Agreement

provided for a net payment to Plaintiff, and Attorney Frattarelli represented that

Plaintiff concurred in Defendants' reading of the Memorandum of Agreement."
(Doc. 30-2 ¶ 9).

Attorney Frattarelli discussed this issue with his client and sent an email to
Attorney Nieman on October 25, 2013, indicating that "we agree that your client's
interpretation of the settlement payout period is correct.  It would be 9% of the
monies that KCI receives from Encompass."  (Doc. 16, Ex. 28 at 113).  Attorney
Frattarelli also attached a revised Settlement Agreement to Attorney Nieman that
included the following language: "The monthly installment will be equal to nine
percent (9.0%) of the revenues, compensation and/or other monies that Encompass
is obligated to pay [KCI], pursuant to a separate agreement under which
Encompass is obligated to make monthly payments to [KCI]."  (Doc. 16, Ex. 28 at
117).

After protracted discussions between the parties about Encompass's
willingness to pay Giblin under the Settlement Agreement, Attorney Nieman
forwarded Attorney Frattarelli a red-lined version of the Settlement Agreement on
November 18, 2013.  (Doc. 16, Ex. 32).  Attorney Nieman indicated that it was his
client's "understanding that the payment would be 9% of the Encompass payment
less deductions made by Encompass, which would include the payment to
Stechmann."  (Id. at 140).  The relevant language in Attorney Nieman's draft
agreement stated that "[t]he monthly installment will be equal to nine percent
(9.0%) of the revenues, compensation and/or other monies that Encompass is
obligated to pay, net any amount that Encompass pays Gerard Stechmann, his

4

Estate, heirs or assigns, pursuant to a separate agreement under which Encompass is obligated to make monthly payments to [KCI]." (Id. at 148). Gerard Stechmann ("Stechmann") is a now-deceased shareholder of KCI. (Doc. 15-3 ¶ 42). Litigation between KCI and Stechmann resulted in a settlement by terms of which Encompass agreed to make monthly payments to Stechmann and, subsequently, his estate. (Id.)

Attorney Frattarelli responded via email on November 19, 2013, indicating that he believed Attorney Nieman's position was contrary to the language of the MOA and that the parties had not previously discussed that type of arrangement. (Doc. 16, Ex. 33 at 160). Attorney Frattarelli did not receive a response to his email and filed the instant motion to lift the stay and enforce the settlement agreement on December 13, 2013. (Doc. 15). The motion is fully briefed and ripe for disposition.

## II.   **Standard of Review**[1]

Motions to enforce settlement agreements are treated like summary judgment motions, and thus the moving party must show that it is entitled to relief. See Leonard v. Univ. of Delaware, 204 F. Supp. 2d 784, 786 (D. Del. 2002) (citing Tiernan, 923 F.2d at 1031-32). Summary judgment is appropriate when "there is no

---

[1] A district court retains jurisdiction to enforce a settlement agreement entered into by the parties in a case pending before it. See McCune v. First Judicial Dist. of Pa. Probation Dept., 99 F. Supp. 2d 565, 566 (E.D. Pa. 2000); Ballato v. General Electric, 147 F.R.D. 95, 97 (E.D. Pa. 1993). Jurisdiction is grounded in public policy favoring the amicable resolution of disputes and the avoidance of costly and time-consuming litigation before the court. D.R. by M.R. v. East Brunswick Bd. Of Educ., 109 F.3d 896, 901 (3d Cir. 1997).

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

**III.** **Choice of Law**

When a federal court sits in diversity, it generally applies the substantive law of the state in which it sits. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). However, when contracts incorporate a choice of law provision, a federal court may apply the substantive law of a state other than the forum. In the instant case, the MOA does not contain a choice of law provision; however, the employment agreement provides for the application of New Jersey law. (See Doc. 16 Ex. 1). Thus, there are competing considerations for choice of law. Under these circumstances, a federal court sitting in diversity must apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941). Accordingly, the court shall apply Pennsylvania choice of law rules.

Under Pennsylvania law, the threshold question is whether the parties "explicitly or implicitly" agreed to the application of a certain state's law. Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 164 (3d Cir. 1999) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187; Smith v. Commonwealth Nat'l

Bank, 557 A.2d 775, 777 (Pa. Super. Ct. 1989)).  Pennsylvania courts will generally

honor the intent of the contracting parties.  Id.  In Assicurazioni, the Third Circuit

found that the parties intended for Indiana law to apply even though the controlling

documents did not contain an explicit choice of law clause.  Id. at 164-65.  The Court

reasoned that the contract's references to the laws of a particular state provided

"persuasive evidence that the parties to the contract intended for that state's law to

apply."  Id. at 165.

Neither party raised the choice of law issue in their briefs.  As noted, the

initial MOA itself does not include an express provision concerning the applicable

governing law.  (See Doc. 16, Ex. 25).  However, subsequent drafts of the Settlement

Agreement include the following choice-of-law provision: "This Agreement shall be

covered by and considered and enforced in accordance with the laws of the State of

New Jersey without regard to any principles of choice of law that may otherwise be

applicable."  (See Doc. 16, Exs. 26, 28, 32).  The parties exchanged several drafts of

the Settlement Agreement, as contemplated by the MOA, without altering this

provision.  Thus, it is clear that the parties mutually assented to the application of

New Jersey law.

Pennsylvania courts generally uphold choice of law contract clauses,

provided that (1) the contract bears a reasonable relationship to the state whose law

is chosen to govern and (2) application of the chosen law does not violate a strong

public policy of the forum state.  See RESTATEMENT (SECOND) OF CONFLICT OF LAWS

§ 187; Stone Street Services, Inc. v. Daniels, Civ. A. No. 00-1904, 2000 WL 1909373,

at *4 (E.D. Pa. Dec. 29, 2000); <u>Smith v. Commonwealth Nat'l Bank</u>, 557 A.2d 775, 777 (Pa. Super. Ct. 1989).  In this case, the parties settled on the morning of a scheduled arbitration before a former Chief Justice of the New Jersey Supreme Court. Moreover, the parties had already agreed in the underlying Employment Agreement that any dispute between the parties would be governed by New Jersey law.  (<u>See</u> Doc. 4-3, Ex. C ¶ 8 ("This Second Amendment shall be governed by and construed in accordance with the laws of the State of New Jersey.")).  Thus, the parties' settlement bears a reasonable relationship to New Jersey.  Further, application of New Jersey law would not violate any strong public policy of Pennsylvania.  Thus, the court will apply New Jersey law to determine the settlement's enforceability.

## IV.  <u>Discussion</u>

Giblin requests the court to lift the stay and enforce the settlement between the parties by ordering defendants to sign the Settlement Agreement forwarded to Attorney Nieman on October 25, 2013.  Giblin also requests the court to interpret the Settlement Agreement to require a monthly payment from Encompass to Giblin equal to nine percent of the total monthly revenue that Encompass is required to pay KCI, without regard to any payments that Encompass may make to any other creditors of KCI.  Giblin further requests reasonable attorneys' fees and costs associated with the filing of the instant motion.  The court will first address the enforceability and appropriate interpretation of the Settlement Agreement.  If necessary, the court will then discuss Giblin's right to attorneys' fees.

8

A.     Terms of Settlement Agreement

Defendants assert that the October 25, 2013 draft Settlement Agreement is unenforceable because the parties did not agree to all material terms.  Specifically, defendants claim that the MOA did not specify whether Giblin is entitled to receive nine percent of the "gross" monthly revenue that Encompass is required to pay KCI or if Giblin is entitled to receive nine percent of the "net" monthly revenue after Encompass pays a percentage of its monthly revenue to Stechmann.  Defendants assert that this ambiguity is so pervasive that it renders the agreement unenforceable.  Giblin asserts that the plain language of the MOA clearly states that Encompass would pay Giblin nine percent of the money it owed KCI, without regard to Encompass's payment to other KCI creditors.

In New Jersey, the validity and enforceability of settlement agreements are governed by principles of contract law.  See Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990).  Parties may freely enter into settlement agreements, which are enforceable absent a demonstration of "fraud or other compelling circumstances." Pascarella v. Bruck, 462 A.2d 186, 190 (N.J. Super. Ct. App. Div. 1983) (quoting Honeywell v. Bubb, 325 A.2d 832 (N.J. Super. Ct. App. Div. 1974).  A contract is enforceable when the parties agree on the essential terms and manifest an intention to be bound by those terms.  United States v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997).  The terms of the contract must be sufficiently definite that a court may determine with reasonable certainty the performance required from each party.  Id.  If it appears

9

that the parties do not agree on one or more essential terms, the court will find the agreement unenforceable.  Id.

New Jersey courts follow the expansive method of contract interpretation espoused by Professor Arthur L. Corbin.  Conway v. 287 Corporate Ctr. Assoc., 901 A.2d 341, 346 (N.J. 2006).  Under New Jersey law, the court must consider all relevant evidence that will assist in determining the contract's intent and meaning. Id.  Even when the contract is unambiguous, the court is permitted to examine "the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain," in determining the intention of the parties.  Atl. N. Airlines v. Schwimmer, 96 A.2d 652, 656 (N.J. 1953).  However, such evidence may not be used to vary the terms of the contract.  Conway, 901 A.2d at 347.  In other words, if "the evidence tends to show, not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant."  Schwimmer, 96 A.2d at 656; see also YA Global Inv., L.P. v. Cliff, 15 A.3d 857, 862-63 (N.J. Super. Ct. App. Div. 2011).  In the case *sub judice*, the evidence clearly indicates that the parties intended to be bound by the MOA's terms.  The MOA's terms render each party's required performance easily determinable.  The parties expressly agreed that Giblin will be paid $300,000.00 in exchange for mutual general releases.  The parties further agreed that Giblin would receive its settlement funds from Encompass. Indeed, the parties *agree* that Giblin is entitled to a payment of nine percent "of the monthly revenue that Encompass is obligated to pay" KCI.  (See Doc. 16, Ex. 25).

The *only* point of contention between the parties is the method of calculating nine percent of monthly revenue.

Upon review of the circumstances surrounding execution of the MOA, there is no genuine dispute of material fact that the parties agreed that Giblin would be paid by receiving nine percent of the total monthly revenue that Encompass is obligated to pay KCI, without regard to any other payments Encompass was making to other KCI creditors.  The plain language of this term of the MOA does not reference the existence of other KCI creditors.  Instead, it states that the nine percent would be based on the amount that Encompass is "*obligated*" to pay KCI, plainly referencing the *gross* amount that Encompass must pay KCI.

That Encompass is paying off part of its obligation to KCI by directly paying other KCI creditors does not change the total amount that Encompass is obligated to pay KCI.  Encompass's direct payments to KCI's creditors are nothing more than an accommodation to KCI and its creditors.  If Encompass ceased payments, KCI would seek the entirety of Encompass's monetary obligation, not simply the remainder after subtracting the monetary amount of KCI's obligations to its creditors.  (See Doc. 17 at 9).

The court's construction of the plain language of the agreement is reinforced by the parties' negotiations resulting in execution of the MOA.  During these negotiations, the parties never discussed the concept of Encompass making

11

payments to Giblin after deducting the amounts due to other KCI creditors.[2]

Cooperman tenuously alleges that "[a]t the time that we entered into the [MOA],

Plaintiff was aware that KCI receives payment from [Encompass] after Encompass

deducts amounts due to other creditors of KCI and myself." (Doc. 20-1 ¶ 15). Giblin

does not dispute this assertion; Giblin places this discussion in context and

persuasively observes that the parties discussed Encompass's direct payments to

other creditors of KCI *conceptually,* i.e., as a possible scenario for payments to

Giblin. (Doc. 15-3 ¶ 45; Doc. 17 at 8). The record is devoid of any indication that the

parties understood Encompass's payments to Giblin to be based upon a net of

Encompass's other monthly payment obligations.

 When the parties entered into the MOA, Giblin did not know the extent of

Encompass's obligations to KCI's creditors. (Doc. 26-1 ¶ 14). It is undisputed that

the parties contemplated a payoff period of approximately three years, a time frame

entirely consistent with payments based on nine percent of Encompass's total

obligations to KCI. (See Doc. 15-3 ¶ 34; Doc. 26-1 ¶ 5). Logically, the parties would

have addressed the effect of Encompass's payments to Stechmann or any other KCI

creditors on the payoff period had those payments been relevant to Giblin's

---

[2] Giblin makes this assertion in materials filed in support of his motion. (See Doc. 15-3 ¶¶ 43, 44; Doc. 16, Ex. 33 at 160; Doc. 17 at 7; Doc. 26-1 ¶ 12). Defendants do not even attempt to controvert Giblin's assertion. Hence, it is undisputed for purposes of this motion. See FED. R. CIV. P. 56(c)(1) (requiring the non-movant for a summary judgment motion to establish a genuine dispute of material fact by either "citing to particular parts of materials in the record" or "showing that the materials cited [by the movant] do not establish the absence of presence of a genuine dispute").

agreement with KCI.  For example, the parties would have been compelled to

contemplate any future adjustments to the monthly payment amount necessitated

by the full satisfaction of one or more of Encompass's payment obligations to other

KCI creditors.  Compounding the mystery of defendants' position, the record

indicates that Encompass pays directly to another creditor of KCI, but Attorney

Nieman did not provide language including this creditor in his proposed changes to

the Settlement Agreement on November 18, 2013.  (See Doc. 15-3 ¶ 45; Doc. 17 at 8;

Doc. 16, Ex. 33 at 160 ("and for that matter, why is it 9% after net to Stechmann and

not 9% after net to Doug Barbone, who also is getting paid directly?")).

Defendants assert that Giblin's present position contradicts Attorney

Frattarelli's October 25, 2013 email where Attorney Frattarelli indicated that "we

agree that your client's interpretation of the settlement payout period is correct."

(Doc. 16, Ex. 28 at 113).  Attorney Frattarelli refutes this, asserting that he was only

expressing his agreement with Attorney Nieman's position that Encompass would

owe Giblin nine percent of what Encompass owes KCI, as opposed to nine percent

of Encompass's total revenue.  (Doc. 15-3 ¶ 36).  Regardless, evidence of the parties'

discussions following the execution of the MOA does not change the court's

determination that, based on the wording of the MOA and the circumstances of its

formation, the parties had agreed to the essential terms of the settlement and

manifested an intention to be bound by the MOA's terms.  There is no genuine

dispute that the parties agreed for Encompass to pay Giblin nine percent of the

total monthly revenue that Encompass is required to pay KCI, without regard to

13

any payments that Encompass may make to any other creditors of KCI.  Thus, the

court will lift the stay and enforce the settlement agreement consistent with this

decision.[3]

## B.    Attorneys' Fees

Giblin also seeks an award of attorneys' fees incurred as a result of the

instant motion.  The MOA specifically provides that "[i]n the event either party

brings an action or lawsuit in connection with this settlement agreement, the

successful party shall be entitled to payment of reasonable attorneys fees and costs

from the losing party."  (Doc. 16, Ex. 25 at 94).  The court has found the MOA to be

an enforceable settlement agreement.  Therefore, the court will enforce its terms

and grant Giblin's request for attorneys' fees related to the instant motion.

---

[3] Giblin further requests the court to order defendants to pay a "lump sum" equal to nine percent of total revenues that Encompass was obligated to pay KCI for October, November, and December 2013.  (Doc. 15 at 2; Doc. 17 at 15 ¶ 2).  The MOA explicitly contemplates that payments would begin in October, 2013.  (Doc. 16, Ex. 25 at 92).  The court will enforce the MOA and thus, KCI currently owes Giblin all payments from October, 2013 to the present.  However, the court will direct the parties to confer concerning an appropriate period for the payment of this amount.

## V.    <u>Conclusion</u>

For the above-stated reasons, the court will lift the stay entered by the court

on September 11, 2012, enforce the settlement agreement, and award Giblin's

request for attorneys' fees related to the instant motion.  An appropriate order

follows.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:      July 7, 2014